# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00698-COA

**IN THE MATTER OF THE ADOPTION OF**  **APPELLANT**
**M.R.H.: J.M.H.**

**v.**

**S.L.P. AND A.P.**  **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/26/2019 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JAMES A. WILLIAMS |
| ATTORNEY FOR APPELLEES: | SHAKITA LANETTE TAYLOR |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 09/29/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     The Forrest County Chancery Court terminated J.H.'s parental rights to his son, M.H.[1] J.H. appealed, asserting the chancery court erred in (1) applying the 2017 amendment to Mississippi Code Annotated section 93-15-121 (Supp. 2017); (2) finding that J.H. had been convicted of child exploitation in accordance with Mississippi Code Annotated section 93-15-121(h)(i)(4); (3) solely relying on the report of the guardian ad litem (GAL); and (4) terminating his parental rights.  Finding no error, we affirm the chancery court's judgment terminating J.H.'s parental rights.

---

[1] We use initials for all parties and witnesses to maintain confidentiality.

**FACTS**

¶2.    J.H. and S.P. are the parents of M.H., who was born in 2011. J.H. and S.P. lived together until 2014, when J.H. was arrested for the aggravated domestic violence of S.P. In 2015, J.H. pled guilty to that charge and was sentenced to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with one year to serve and fourteen years suspended. J.H. was released in June 2015. In July 2015, J.H. was arrested for the crime of child exploitation and later pled guilty.[2] On August 10, 2015, the chancery court granted S.P. temporary custody of M.H.

¶3.    S.P. married A.P. on October 30, 2015. On October 12, 2016, S.P. filed a petition for adoption and termination of J.H.'s parental rights so that A.P. could adopt M.H. S.P. claimed that J.H. had abandoned and deserted M.H. On April 5, 2017, J.H. filed a motion for continuance. On April 10, 2017, the chancery court appointed a GAL in accordance with Mississippi Code Annotated section 93-15-107(1)(d) (Rev. 2013). S.P. amended her petition on April 20, 2017, citing two additional grounds for termination—J.H.'s failure to exercise reasonable visitation or communication with M.H. and J.H.'s conviction of child exploitation. J.H. filed an answer denying those allegations. On April 12, 2018, S.P. and A.P. filed an amended petition, adding A.P. as a petitioner. J.H. never responded to the amended petition. The chancery court held a hearing on the petition on February 6, 2019. The following witnesses testified: J.H., S.P., A.P., A.P.'s mother, J.H.'s mother, J.H.'s sister, and the GAL.

---

[2] On November 29, 2016, the circuit court sentenced J.H. to five years in the custody of the MDOC.

¶4.     J.H. testified that he has not had a relationship with M.H. since M.H. was three-and-a-half years old, but they had a good relationship before he went jail. J.H. testified that he saw M.H. four times in 2015. He last saw M.H. in July 2015 during a supervised visit. Since then, he has never tried to send messages to M.H. through S.P. or her mother. J.H. stated that he was currently serving his sentence for the crime of child exploitation pursuant to Mississippi Code Annotated section 97-5-33 (Rev. 2014). His expected release date was September 13, 2020.

¶5.     S.P. testified that J.H. tried to kill her during a twelve-hour period, which resulted in her leaving and filing domestic violence charges. She also testified that J.H. had only seen M.H. three times between their separation in 2014 and February 2019 and that only one of those visits was an overnight visit, which her mother supervised. Further, S.P. stated that M.H. considers A.P. his father and that A.P. is involved in all aspects of M.H.'s life.

¶6.     A.P. testified that M.H. calls him "Dad" and that M.H. has a relationship with his parents and cousins. A.P. also expressed his desire to adopt M.H. and to continue caring for him.

¶7.     A.P.'s mother testified that both S.P. and A.P. have a loving relationship with M.H. She stated that A.P. coaches M.H. in soccer, reads with him, and plays video games with him. She also stated that she and her husband loved M.H. like their own grandson.

¶8.     J.H.'s sister testified that she was at the hospital when M.H. was born. She also stated that she witnessed her brother's taking care of M.H. between the summer of 2013 and the summer of 2014.

¶9. J.H.'s mother testified that she was also at the hospital when M.H. was born. She last saw M.H. in 2015 after J.H. was released from jail. She stated that she wanted J.H. to come live with her after he was released from prison, and she hoped they could have a relationship with M.H.

¶10. The GAL testified that as part of her investigation, she interviewed J.H., J.H.'s mother, as well as S.P. and A.P. She also conducted a follow-up interview with S.P. and A.P. (which included a home study), and reviewed M.H.'s medical records. A copy of her report was admitted into evidence. Ultimately, the GAL recommended that J.H.'s parental rights be terminated so that A.P. could adopt M.H.

¶11. On March 21, 2019, the chancery court issued a memorandum opinion and ruling, finding that S.P. and A.P. had proved by clear and convincing evidence that J.H.'s rights should be terminated based on his failure to exercise reasonable visitation or communication with the child (section 93-15-121(e)) and his conviction of an exploitation of a child (section 93-15-121(h)(i)(4)). The court entered a final decree of adoption on March 26, 2019.

¶12. J.H. appealed.

## STANDARD OF REVIEW

¶13. In termination-of-parental-rights cases, we review a chancellor's fact findings "under the manifest error/substantial credible evidence test" and will not reverse if there is "credible proof [] to support the chancellor's finding of fact by clear and convincing evidence." *Chism v. Bright*, 152 So. 3d 318, 322 (¶12) (Miss. 2014) (quoting *W.A.S. v. A.L.G.*, 949 So. 2d 31, 34 (¶7) (Miss. 2007)). "It is not this Court's role to substitute its judgment for the

4

chancellor's." *K.D.F. v. J.L.H.*, 933 So. 2d 971, 975 (¶14) (Miss. 2006) (citing *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (¶8) (Miss. 2002)).

¶14.   "[Q]uestions of law such as statutory construction are subject to de novo review, and if a chancellor misapprehends the controlling rules of law or acts pursuant to a substantially erroneous view of the law, reversal is proper." *Chism*, 152 So. 3d at 322 (¶12) (citing *Ethredge v. Yawn*, 605 So. 2d 761, 764 (Miss. 1992)).

## ANALYSIS

### I.      The 2017 Amendment

¶15.   J.H. first argues that the court incorrectly applied the 2017 amendment to the TPR statute because S.P. and A.P.'s original petition was filed in 2016.  Further, J.H. argues this alleged error prejudiced him because the 2017 amendment states that a parent's rights may be terminated if "reunification between the parent and child is not desirable" as opposed to the 2016 statute that stated, "[I]f future contacts between the parent and child are not desirable."  Miss. Code Ann. § 93-15-121 (Supp. 2016); and Miss. Code Ann. § 93-15-121 (Supp. 2017).

¶16.   J.H.'s argument is without merit because the 2017 amendment was in effect when his parental rights were terminated in 2019.  The effective-date provision for the statutes governing termination of parental rights as amended in the 2017 legislative session specifically states, "This act shall take effect and be in force from and after its passage [(approved March 20, 2017)]."  2017 Miss. Laws ch. 372 (S.B. 2342).  This Court recently held the same in *C.S.H. v. Lowndes Cnty. Dep't of Human Servs.*, 246 So. 3d 908, 914 n.3

5

(Miss. Ct. App. 2018), stating that the chancellor applies the version of the statute in effect at the time the parental rights were terminated. Accordingly, we find no error in the chancellor's application of the 2017 amendment to determine whether to terminate J.H.'s parental rights.

## II. J.H.'s Conviction of Child Exploitation

¶17. J.H. also argues there was no evidence to show that the crime he committed involved a child in accordance with Section 93-15-103(b) (Supp. 2017), which defines "child" as a person under eighteen years of age. As a result, he contends that the chancery court erred in terminating his parental rights pursuant to section 93-15-121(h)(i)(4).

¶18. At the hearing, J.H. testified that he pled guilty to child exploitation. *See* Miss. Code Ann. § 97-5-33 (Rev. 2014). His order of conviction was read into the record, and his MDOC records were admitted into evidence. J.H. argues that because section 97-5-33(8) allows a person to be prosecuted when a law enforcement officer poses as a child, the chancellor was required to determine whether J.H. committed a crime with a person under eighteen years of age before terminating his parental rights under section 93-15-121(h)(i)(4).

¶19. We are not persuaded by J.H.'s logic. Section 93-15-121(h)(i)(4) allows for termination of parental rights if a parent has been convicted of exploitation of a child under sections 97-5-31 through 97-5-37. There is no question that J.H. was convicted under section 97-5-33. It is inconsequential whether J.H. committed that crime with a person under the age of eighteen or a law enforcement officer posing as a person under the age of eighteen because either may result in a conviction under section 97-5-33. His intent was nevertheless

6

present. If the Legislature wanted to require a judge to make that specific finding before terminating a person's parental rights, it would have specified so in section 93-15-121. In fact, the Legislature allows for the termination of parental rights if an individual is convicted under any one of the eight subsections of 97-5-33, which J.H. certainly was.

¶20. J.H.'s argument belies the language of 97-5-33(8), which reads as follows: "The fact that an undercover operative or law enforcement officer posed as a child or was involved in any other manner in the detection and investigation of an offense under this section shall not constitute a defense to a prosecution under this section." That language eliminates as a defense to the crime of exploitation the very argument J.H. made to the chancery court as a defense to the termination of his parental rights. However, that language only applies to the criminal charge in the circuit court and has no effect on whether the crime for which he pled guilty applies to the TPR. The Legislature clearly intended all subsections of 97-5-33 to apply to an individual convicted under that Section and whose parental rights are attempting to be terminated. J.H. would have the chancellor retry the issues in the criminal indictment to determine if a child was involved. No such requirement exists in section 97-15-121. Further, the law of this State clearly authorizes chancellors to allow that as a legal basis for the termination of parental rights under section 93-15-121(h)(i)(4) if it is proved and found from substantial evidence. That was done in this case. For these reasons, we find no merit to J.H.'s argument.

### III.    The GAL's Report

¶21. J.H. also claims the chancery court erred in considering hearsay from the GAL report

to support its final decision. At the hearing, J.H. objected to the introduction of the GAL's report, arguing that there was "numerous hearsay" in the report such as M.H.'s mental health records and school records.

¶22. On April 10, 2017, the chancery court entered an order appointing the GAL. The order stated that "[t]o fulfill her duties, the [GAL] shall have immediate access to the minor child in this case, as well as access to all otherwise privileged or confidential information regarding the minor child," including medical records and school records. In the order, the court also recognized the GAL as an expert witness under Mississippi Rule of Evidence 706. The court further stated that "the opinions and recommendations offered by the [GAL], and the factual basis for these opinions derived in the course of investigation, shall be governed by [Mississippi Rules of Evidence 702, 703, 803(6), 803(8), and 803(24)-(25)]." Finally, the court stated that any objections to the GAL's appointment or qualifications must be filed within thirty days of the order. J.H. made no objection within that time frame. Consequently, J.H.'s argument is procedurally barred. *See In re Adoption of Minor Child*, 931 So. 2d 566, 576 (¶23) (Miss. 2006) (finding mother's argument on the GAL's qualifications procedurally barred because she failed to raise that issue at the trial level)). Procedural bar notwithstanding, we find no merit to J.H.'s argument because the order clearly allowed for the consideration of those records.

¶23. J.H. further argues that the chancery court erred in solely relying on the GAL's report in terminating his parental rights without making its own findings. J.H. specifically refers to the GAL's testimony regarding section 93-15-121(f), which allows the termination of

parental rights when "[t]he parent's abusive or neglectful conduct has caused, at least in part, an extreme and deep-seated antipathy by the child toward the parent, or some other substantial erosion of the relationship between the parent and the child." At trial, the GAL testified that J.H.'s prolonged absence from M.H.'s life caused a "deep seated antipathy by the child toward the parent, or some other substantial erosion of the relationship." She also included these findings in her report.

¶24. At the outset, we note that the chancellor did not find that section 93-15-121(f) was a ground for termination, which renders J.H.'s argument moot on appeal. Even so, the chancery court's memorandum and opinion provided independent detailed findings of fact on the testimony and evidence presented at the hearing. In addition, the chancellor incorporated a required summary of the GAL's findings of fact and conclusions of law, which included the testimony stated above. *See S.N.C. v. J.R.D. Jr.*, 755 So. 2d 1077, 1082 (¶18) (Miss. 2000) (holding that "chancellor[s] shall include at least a summary review of the qualifications and recommendations of the guardian ad litem in the court's findings of fact and conclusions of law"). Ultimately, the chancellor found S.P. and A.P. proved by clear and convincing evidence that J.H.'s parental rights should be terminated on different grounds—those in section 93-15-121(e) and section 93-15-121(h)(i)(4).

¶25. The chancellor's opinion in this case conformed to the law and was supported by substantial evidence. The fact that the GAL included a finding in her report that the chancellor did not likewise find does not vitiate the remaining findings of facts the chancellor did find. We find no abuse of discretion in the chancellor's decision to do so because there

9

was credible evidence in the record to support that finding.

### IV.    The Termination of J.H.'s Parental Rights

¶26.    Finally, J.H. argues that the chancery court erred in granting S.P. and A.P.'s TPR petition. As previously stated, the standard of review is manifest error/substantial credible evidence. *Chism*, 152 So. 3d at 322 (¶12). We must ask whether there was credible proof to support the chancellor's judgment by clear and convincing evidence. *W.A.S.*, 949 So. 2d at 34 (¶7).

¶27.    Here, the chancellor found that S.P. and A.P proved by clear and convincing evidence that J.H.'s rights should be terminated based on his failure to exercise reasonable visitation or communication with the child (section 93-15-121(e)) and his conviction of exploitation of a child (section 93-15-121(h)(i)(4)). In Issue II, we discussed at length the credible evidence regarding J.H.'s child exploitation conviction under 97-5-33, which is a ground for termination pursuant to section 93-15-121(h)(i)(4). For the reasons discussed above, we affirm the chancellor's finding on that ground.

¶28.    We now turn to whether there was credible evidence to support the chancellor's finding that J.H. had failed to exercise reasonable visitation or communication with M.H. The record shows that J.H. last saw M.H. in July 2015 for a supervised visit. The record further shows that J.H. had not attempted to communicate with M.H. since that visit. When J.H. was asked what kind of relationship he had with M.H., J.H. responded, "He's not in my life." After review, we find credible proof exists to support the chancellor's finding that S.P. and A.P. proved section 93-15-121(e) by clear and convincing evidence. Therefore, we

10

affirm the chancery court's judgment.

## CONCLUSION

¶29.     In summary, we find the chancery court correctly applied the 2017 amendment to section 93-15-121. We find no error in the chancellor's findings and conclusions regarding section 93-15-121(h)(i)(4). We also find that the chancellor was within her discretion to consider the entirety of the GAL's report and adopt those findings. Further, we find substantial credible evidence in the record to support the chancery court's judgment terminating J.H.'s parental rights. Accordingly, we affirm as to all issues.

¶30.     **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND McCARTY, JJ., CONCUR.**